United States District Court
Southern District of Texas
**ENTERED**
May 03, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ZANE ROBINSON,** § | |
| § | |
| Plaintiff, § | |
| § | **CIVIL ACTION NO. 4:23-cv-4290** |
| VS. § | |
| § | |
| **BRAHMA GROUP, INC.** *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM & ORDER

Before the Court are three Motions: (1) Defendants' Motion to Dismiss for *Forum Non Conveniens*, or, in the Alternative, to Transfer to Delaware (ECF No. 17); (2) Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 18); and (3) Plaintiff's Motion for Leave to File his First Amended Complaint (ECF No. 29). In its Response to Plaintiff's Motion, Defendants stated that they are not opposed to Plaintiff's Motion for Leave, but request that the Court first rule on their earlier-filed Motion to Dismiss, as that Motion is not impacted by Plaintiff's proposed amendments. ECF No. 32. The Court agrees that it will not prejudice either party and will promote judicial economy to begin by considering Defendants' first Motion to Dismiss (ECF No. 17).

### I. BACKGROUND

Plaintiff Zane Robinson is a former employee of Defendant Brahma Group, Inc. ("BGI"). *See* Pl.'s Compl. ¶ 11, 14, ECF No. 1. Defendant Terra Millenium Corporation ("TMC") is the parent company of BGI. *Id.* at ¶ 12. Defendant TMC Buyer, Inc. is a party to the Joinder

1

Agreement (the contract at issue), *id.* at ¶ 22, while Defendant TMC Parent Holdings Corp. is the entity from which Robinson purchased and then sold common stock under circumstances which gave rise to this suit. *Id.* at ¶ 13, 15.

Robinson began working for BGI in 2017. *Id.* at ¶ 11. In 2020, he purchased shares of common stock of TMC Parent Holdings Corp. *Id.* at ¶ 13. In April 2022, Robinson left his position at BGI. *Id.* at ¶ 14. One month later, TMC's Chief Executive Officer informed Robinson that, due to a pending acquisition of TMC by HIG Global, he had to sell his TMC common stock. *Id.* at ¶¶ 15–17. These communications included a 200-page packet of at least 10 separate documents; to clear up stockholder confusion about which of these documents needed signatures, TMC followed up with an email containing a "signature/information packet" and instructions to sign six separate pages. *Id.* at ¶¶ 18–19; *see also* Ex. 1 to Pl.'s Compl, 2, ECF No. 1-1. Robinson signed and returned the six identified pages, believing—based on TMC's note—that doing so was necessary in order for him to sell his TMC shares. *Id.* at ¶ 19.

Shortly thereafter, Robinson noticed that one of the forms he signed—the "Joinder Agreement"—did not pertain to him, because he was a former employee. *Id.* at ¶ 20. As such, he reached out to TMC to explain "that he was misled about needing to execute the Joinder agreement as a former employee and asked that the Joinder Agreement be nullified or voided for him." *Id.* at ¶ 21. TMC's Chief Financial Officer agreed that Robinson had not been required to sign the Joinder Agreement as a former employee and indicated that he would contact TMC's board of trustees' chairman on Robinson's behalf. *Id.* However, Robinson never heard back, and TMC Buyer, Inc. later executed the Joinder Agreement that Robinson had mistakenly signed. *Id.* at ¶¶ 21–22.

The Joinder Agreement provided that each stockholder, including Robinson, "approve[d] and consent[ed] to, and agree[d] to be bound by all of the terms and conditions of the Merger Agreement . . . ," including the "Former Holder Restrictive Covenants and Release set forth in Section 5.16 of the Merger Agreement." Appx. to Defs' Mot. 12, ECF No. 17-1. It also provided that the signing stockholder "has received, read and reviewed the Merger Agreement and has had the opportunity to consult independent legal counsel and other advisors regarding its, his or her rights and obligations under this Agreement." *Id.* at 13. Further, the Joinder Agreement incorporated Section 10.5 of the Merger Agreement by reference. *Id.* at 14. Section 10.5 contained a choice-of-law clause providing that Delaware law shall govern the agreement, and a forum selection clause providing that all actions involving the Merger Agreement must be brought in the Delaware Court of Chancery, or, if that court does not have subject matter jurisdiction, in the United States District Court for the District of Delaware. *Id.* at 10–11.

On June 30, 2023, Robinson began working for Bodell Construction Company ("Bodell"). Compl. ¶ 23. While Robinson was a Bodell employee, he agreed to meet with one of BGI's clients to discuss a different former BGI employee, who the client was hoping would manage one of its future projects. *Id* at ¶ 25. Then, on October 6, 2023, TMC's Chief Legal Officer sent Robinson a cease-and-desist letter, "claiming that, among other things, by signing the Joinder Agreement, Robinson had agreed to be bound by the restrictive covenants found in the Merger Agreement, a document the Joinder Agreement purports to incorporate by reference." *Id.* at ¶ 27. After Robinson contended that the Joinder Agreement should not apply to him, in an October 12, 2023 email, TMC's Chief Financial Officer Mark Hauber again confirmed that Robinson had not been required to sign the Joinder Agreement in order to sell his TMC shares.

3

*Id.* at ¶ 28; Ex. 4 to Pl.'s Compl. 39, ECF No. 1-1. However, Hauber clarified that, in their initial conversation, he "told [Robinson] that [Hauber] did not have the authority to decide" whether TMC would consider voiding the Joinder Agreement, but that, as he told Robinson he would do, he took Robinson's request to TMC's Chairman of the Board. Ex. 4 to Pl.'s Compl. 39. Per Hauber's email to Robinson, the Chairman did not approve Robinson's request, as "[t]he agreement itself states that it can only be amended by a subsequently signed written agreement by both parties, and that was never done or offered." *Id.* Accordingly, TMC maintained that Robinson was bound by the terms of the Joinder Agreement.

Robinson subsequently filed suit in this Court in November 2023. *See id.* He seeks a declaration that the Joinder Agreement is not enforceable against him, and, in the alternative, argues that he did not violate the restrictive covenants, and that the restrictive covenants are unconscionable and reasonable. *Id.* at ¶ 40. He also asserts claims for common law fraud, statutory fraud, negligent misrepresentation, and rescission. *Id.* at ¶¶ 41–56. Defendants filed a Motion to Dismiss for *Forum Non Conveniens*, or, in the Alternative, to Transfer to Delaware (ECF No. 17) and a Motion to Dismiss for Failure to State a Claim (ECF No. 18). Plaintiff then filed a Motion for Leave to File First Amended Complaint (ECF No. 29). Pursuant to the parties' request, and to avoid possibly wasteful and/or duplicative briefing, the Court first considers the Motion to Dismiss for *Forum Non Conveniens*.

## II.     LEGAL STANDARD

The doctrine of *forum non conveniens* is the proper means to enforce a forum selection clause that points to a state forum. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "In the typical case not involving a forum selection clause, a district

court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 62. The presence of a valid forum selection clause simplifies the "usual" analysis in two ways. *Id.*; *see also Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248 (5th Cir. 2023). First, the plaintiff's choice of forum merits no weight. *Atl. Marine*, 571 U.S. at 63. Second, the district court considers only the public-interest factors, as the private-interest factors weigh entirely in favor of the preselected forum. *Id.* at 64. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Trident Steel Corp. v. Vecta Oil & Gas, Ltd.*, No. 4:16-CV-339, 2017 WL 11220349, at *1 (S.D. Tex. Feb. 6, 2017) (Ellison, J.) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).

Accordingly, district courts faced with *forum non conveniens* motions honor the parties' bargained-for forum "[i]n all but the most unusual cases." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 66); *see also Thomas v. Joule Processing LLC*, No. 4:23-CV-01615, 2023 WL 8437634, at *2 (S.D. Tex. Dec. 5, 2023) (Ellison, J.) ("Proper application of § 1404(a) [and *forum non conveniens*] requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Atl. Marine*, 571 U.S. at 59–60)).

5

### III. DISCUSSION

#### A. Forum Selection Clause

Robinson does not dispute the fact that the Joinder Agreement incorporated a forum selection clause by reference. Rather, he avers that the relevant clause is unenforceable on three bases: (1) it is permissive, not mandatory; (2) it does not apply to Robinson's claims; and (3) it is unreasonable under the circumstances. Even if it is enforceable, Robinson argues that the public interest factors weigh against dismissal or transfer.

Federal law governs the enforceability of a forum selection clause, while state law governs its interpretation. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016). "Under federal law, forum selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)).

#### 1. Whether the forum selection clause is mandatory

First, the parties disagree as to whether the clause at issue is mandatory or permissive. To resolve this issue, the Court must interpret the language of the clause. Therefore, state law applies. *See Barnett*, 831 F.3d at 301. The Court applies Texas' choice-of-law rules to determine what substantive law governs. *Id.* "Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause." *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). Here, the Merger Agreement states that it is governed by Delaware law. Appx. to Defs.' Mot. at 10.

Under Delaware law, a forum selection clause is permissive if it "authorize[s] jurisdiction and venue in a designated forum, but do[es] not prohibit litigation elsewhere." *In re Bay Hills Emerging Partners I, L.P.*, No. CV 2018-0234-JRS, 2018 WL 3217650, at *5 (Del. Ch. July 2, 2018) (quoting 14D Charles Allan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (4th ed.) (2018 Westlaw Update)). By contrast, a forum selection clause is mandatory if it "contain[s] clear language indicating that litigation will proceed exclusively in the designated forum." *Id.* "[I]f the forum selection provision does not state that it is exclusive in crystalline terms, [Delaware] courts will construe the provision as permissive." *Germaninvestments AG v. Allomet Corp.*, 225 A.3d 316, 328 (Del. 2020) (citation omitted).

> The forum selection clause at issue in this case provides that:
>
> Any legal suit, action or proceeding arising out of or based upon this agreement, the merger documents or the transactions contemplated hereby or thereby *may be instituted exclusively in* the Delaware Court of Chancery (including the appellate courts thereof), or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court For The District Of Delaware (including the appellate courts thereof).

Appx. to Defs.' Mot. at 11 (emphasis added and block capitalization removed). While the word "may," standing alone, appears permissive, the phrase "may be instituted exclusively in" is clearly mandatory. While Delaware courts appear to have not yet faced a forum selection clause with language identical to this one, other states to consider clauses with identical language have held that the forum selection clauses at issue were mandatory. *See Sixty-Two First St., LLC v. CapitalSource Fin. LLC*, No. C 11-01920 WHA, 2011 WL 2182915, at *1 (N.D. Cal. June 6, 2011) (clause stating that "any such action, suit or proceeding may be brought exclusively in [designated courts]" was mandatory under Maryland law); *Mason v. Themarysue, LLC*, No.

7

3:22-CV-00766-YY, 2022 WL 3098406, at *3 (D. Or. Aug. 4, 2022) ("[T]he phrase 'may be instituted exclusively' is a mandatory forum selection clause, because it unambiguously shows the parties intended that the [designated courts] are "exclusively" the courts in which a claim under the employment agreement "may" be brought.").

Plaintiff points the Court to a case in which the relevant forum selection clause stated, "[a]ny legal proceeding arising out of or based upon [the contracts at issue] *may be* instituted first, in the Court of Chancery . . . and . . . the federal courts of the United States of America located within New Castle County in the State of Delaware . . . and each party irrevocably submits to the *exclusive jurisdiction* of such courts in any such legal proceeding." *Brown on behalf of Emergent Properties Inc. v. Bldg. Engines, Inc.*, No. 121CV10893PKCSDA, 2022 WL 2532177, at *2 (S.D.N.Y. Apr. 15, 2022), *report and recommendation adopted*, No. 21CV10893PKCSDA, 2022 WL 3274124 (S.D.N.Y. Aug. 11, 2022), *aff'd sub nom. Brown v. Bldg. Engines, Inc.*, No. 22-2053, 2023 WL 4540565 (2d Cir. July 14, 2023). Applying Delaware law, the *Brown* court concluded that the clause was permissive because it could be read "as indicating that the parties are not required to bring any dispute to the designated fora and that, only if a party chooses to institute a proceeding in a Delaware court, does the other party 'irrevocably submit[ ] to the exclusive jurisdiction of such courts.'"

The language at issue in this case cannot similarly bear such a meaning. It provides that if a suit is brought in connection with the Merger Agreement, it may be brought *only* in the relevant Delaware courts. Thus, this case is distinguishable from *Brown*. The Court finds and holds that the forum selection clause at issue in this case is mandatory.

### 2. Whether Robinson's claims fall within the scope of the forum selection clause

Next, the Court must assess whether Robinson's claims fall within the scope of the forum selection clause. The forum selection clause applies to "any legal suit, action or proceeding arising out of or based upon th[e Merger] Agreement, the merger documents, or the transactions contemplated hereby or thereby." Appx. to Defs.' Mot. at 10–11. Robinson's Complaint, meanwhile, seeks a declaration from the Court that the restrictive covenants contained in the Merger Agreement do not apply to him, and, alternatively, that he did not violate the covenants, or that the covenants are unconscionable and unenforceable. Compl. ¶ 40. Robinson's Complaint states that "[a]n actual case and controversy exist[s] . . . related to the enforceability of the restrictive covenants in Section 5.16 of the Merger Agreement." *Id.* at ¶ 39. On its face, then, Robinson's case arises out of the Merger Agreement.

Even if Robinson's case were exclusively based on the Joinder Agreement (as he argues), his claims would still fall within the scope of the forum selection clause. The clause applies to suits arising out of the Merger Agreement or the merger documents. Appx. to Defs.' Mot. at 10–11. By the terms of the Merger Agreement, "Merger Documents" include "all other agreements related to the transactions contemplated by this Agreement." Ex. 5 to Pl.'s Compl. 25, ECF No. 16-1. The Joinder Agreement falls within this category. Therefore, the Court finds and holds that Robinson's claims fall within the scope of the forum selection clause.

### 3. Whether the forum selection clause is unreasonable under the circumstances

Courts in the Fifth Circuit "apply a 'strong presumption' in favor of enforcing mandatory [forum selection] clauses." *Eads v. Spheric Assurance Co., Ltd.*, No. 23-20066, 2023 WL

9

8613609, at *2 (5th Cir. Dec. 13, 2023) (quoting *Noble House*, 67 F.4th at 248). That presumption can be overcome only by a clear showing that the clause is "unreasonable under the circumstances." *Id.* (quoting *Noble House*, 67 F.4th at 248). Unreasonableness potentially exists where:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)). Here, Robinson asserts that enforcement of the forum selection clause is unreasonable because (1) its incorporation into the agreement was the product of fraud or overreach and (2) its enforcement would contravene a strong public policy of Texas, the forum state.

The Joinder Agreement states that "Section[] 10.5 . . . of the Merger Agreement shall apply to this Agreement." Appx. to Defs.' Mot. 14. Section 10.5 of the Merger Agreement contains the forum selection clause, which is set forth in all-capital letters. *Id.* at 10. The fact that Robinson was perhaps unaware of the forum selection clause does not establish that its inclusion in the Joinder Agreement was the product of fraud or overreach. *See Snacks R Plenty, LLC v. Travelbee Snacks LLC*, No. 1:12CV236 LG-JMR, 2014 WL 347634, at *3 (S.D. Miss. Jan. 31, 2014) ("Simply asserting that the forum selection clause was confusing to Lucente, or he was unaware of it, does not establish that it was included in the Agreement by fraud or overreaching."); *Haynsworth*, 121 F.3d at 965 n.16 ("A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it." (quoting *In re Cajun Elec.*

*Power Co-op., Inc.*, 791 F.2d 353, 359 (5th Cir. 1986))); *Tate v. RCI, LLC*, No. CV H-17-290, 2018 WL 4282845, at *8 (S.D. Tex. Sept. 7, 2018) ("A party's failure to read a contract incorporated by reference is no defense to enforcing that contract.") *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 444 (E.D. Pa. 2014) ("The failure of Defendants to recognize the existence of a forum selection clause does not give rise to an inference of fraud or overreaching.").

Robinson's allegations that he was fraudulently induced to sign the Joinder Agreement do not impact this Court's analysis. The fact that forum selection clauses are unenforceable where their incorporation into a contract was the product of fraud or overreach,

> does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.

*Haynsworth*, 121 F.3d at 963 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). Robinson does not allege that the Joinder Agreement's reference to the forum selection clause was the product of fraud. The clause's enforcement is therefore not barred by fraud or overreach.

Separately, the Court rejects Robinson's argument that enforcement of the forum selection clause in this case would contravene Texas public policy. The Texas Supreme Court has emphatically stated that Texas public policy does *not* militate against enforcing a forum selection clause that points to a different forum. *In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007). The *In re AutoNation* court reasoned that "the parties' bargained-for agreement merits judicial respect" and explained that the Texas Supreme Court has "never declared that fundamental Texas policy requires that every employment dispute with a Texas resident must be litigated in Texas." *Id.* at 669–70.

As such, Robinson has not met his heavy burden of establishing that it would be unreasonable to enforce the forum selection clause in this case.

### 4.  Public interest factors

Having determined that the forum selection clause is enforceable, the Court now weighs the four public interest factors to assess whether dismissal is appropriate. *See Snacks R Plenty*, 2014 WL 347634, at *4 (S.D. Miss. Jan. 31, 2014). These factors "will rarely defeat" a motion to dismiss for *forum non conveniens*, so "the practical result is that [forum selection clauses] should control except in unusual cases." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 64). The parties agree that the fourth public interest factor is neutral and disagree as to the valence of the first three factors.

#### a.  Administrative difficulties flowing from court congestion

Courts in the Fifth Circuit have remarked that this first factor "appears to be the most speculative." *Moates v. Facebook Inc.*, No. 4:20-CV-896-ALM-KPJ, 2021 WL 3013371, at *9 (E.D. Tex. May 14, 2021) (quoting *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012)). This factor asks "not whether [dismissal for *forum non conveniens*] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co., LLC*, No. 3:17-CV-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018), *report and recommendation adopted*, No. 3:17-CV-00341, 2018 WL 4931783 (S.D. Tex. Oct. 11, 2018) (quoting *Rosemond v. United Airlines, Inc.*, No. H–13–2190, 2014 WL 1338690, at *4 (S.D. Tex. Apr. 2, 2014)).

To the Court's knowledge, the Delaware Court of Chancery does not provide data on the average time interval from case filing to disposition.[1] Available data shows that there are about 187 civil filings per judicial officer in the Court of Chancery. *See 2023 Annual Report Statistical Information for the Delaware Judiciary*, DELAWARE COURTS 11, https://courts.delaware.gov/aoc/annualreports/fy23/doc/2023StatisticalInformationReport.pdf (reporting 1,310 civil filings in FY 2022-2023) and *Judicial Officers*, Delaware Courts, https://courts.delaware.gov/chancery/judges.aspx (noting that there are seven Chancellors and Vice Chancellors in the Delaware Court of Chancery). Dockets in this district are more crowded: there is an average of 337 civil filings per judge. *U.S. District Courts—National Judicial Caseload Profiles*, UNITED STATES DISTRICT COURTS 36, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf. It is, of course, impossible to definitively conclude from these figures that this case would proceed to trial in the Court of Chancery more rapidly than in this Court—for instance, the matters before judicial officers in the Court of Chancery may be more complex or require more discovery than those in this Court. But, on balance, the Court concludes that this first factor weighs slightly in favor of dismissal.

**b. Local interest in having localized interests decided at home**

Texas and Delaware have approximately equal claims to deciding localized interests at home in this suit. On the one hand, Robinson is a Texas resident, worked for BGI in this District, and receive a cease-and-desist letter attempting to stop him from engaging in certain work in this

---

[1] Based on its below conclusion that the Delaware Court of Chancery has subject matter jurisdiction over the action, the Court compares the Court of Chancery's docket congestion—rather than that of the United States District Court for the District of Delaware—with that of this Court.

13

District. Compl. ¶¶ 2, 11, 23–26. On the other hand, three of the four Defendants in this case are Delaware corporations, and none of the Defendant corporations were incorporated in or have their principal place of business in Texas. *Id.* at ¶¶ 3–6. This factor is neutral.

### c. Familiarity of the forum with the law that will govern this case

The contracts at issue in this case contain choice-of-law provisions for Delaware law. Def.'s App'x at 10, 14. Robinson contends that these provisions are unenforceable, meaning that Texas law applies and this factor therefore weighs against dismissal, as this District presumably is more familiar with Texas law.

Even if Robinson were correct that this factor weighed against dismissal, that would not change the Court's conclusion, given that the first factor weighs in favor of enforcement, and the rest are neutral. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (noting that none of the public or private interest factors "can be said to be of dispositive weight").

All in all, this case is not one of those exceptional instances in which the public interest factors carry the day.

### B. Whether the case should be dismissed or transferred

The forum selection clause provides that all actions arising out of the contracts at issue are to be brought in the Delaware Court of Chancery, or, if that court does not have subject matter jurisdiction over the action, in the United States District Court for the District of Delaware. Appx. to Defs.' Mot. at 11. Thus, if the Delaware Court of Chancery has subject matter jurisdiction over this case, it should be dismissed for *forum non conveniens*; if it does not have jurisdiction, the case should be transferred.

The Court of Chancery can exercise subject matter jurisdiction where (1) a plaintiff states an equitable claim; (2) a plaintiff seeks equitable relief where there is no adequate remedy at law; or (3) the General Assembly has vested it with jurisdiction by statute. *Kroll v. City of Wilmington*, No. 2019-0969-KSJM, 2023 WL 6012795, at *4 (Del. Ch. Sept. 15, 2023); *Mock v. Div. of State Police, Dep't of Safety & Homeland Sec.*, No. CV 2019-0229-MTZ, 2022 WL 1744439, at *5 (Del. Ch. May 31, 2022); *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Delaware*, No. CIV.A. 7881-VCG, 2014 WL 2218730, at *1 (Del. Ch. May 29, 2014). To avoid piecemeal litigation, the "clean-up doctrine" provides that, where the Court of Chancery has jurisdiction as to a portion of complaint, it may assert jurisdiction over the remaining aspects of the complaint (over which it would otherwise lack jurisdiction). *Kroll*, 2023 WL 6012795, at *4; *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 113 (Del. Ch. 2017); *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

Defendants submit that the Court of Chancery has subject matter jurisdiction over three of Robinson's five claims: his claims for declaratory judgment (Count I), negligent misrepresentation (Count IV), and rescission (Count V). Robinson does not—and, it seems, cannot—contest that the Court of Chancery possesses subject matter jurisdiction over these claims. *See Legent Grp., LLC v. Axos Fin., Inc.*, No. CV 2020-0405-KSJM, 2021 WL 73854, at *2 (Del. Ch. Jan. 8, 2021) (explaining that DEL. CODE ANN. tit. 8, § 111 vests the Court of Chancery with jurisdiction over civil actions involving merger agreements);[2] *Mark Fox Grp., Inc. v. E.I. duPont de Nemours & Co.*, No. CIV.A. 20081, 2003 WL 21524886, at *5 (Del. Ch.

---

[2] It seems to be an open question whether Section 111 confers permissive or mandatory jurisdiction. *See Legent Grp.*, 2021 WL 73854, at *2 n.14 (Del. Ch. Jan. 8, 2021). In any event, even if it were not appropriate for the Court of Chancery to exercise jurisdiction over Robinson's declaratory judgment claim on its own, the clean-up doctrine would allow it to exercise jurisdiction over this claim, given that it has jurisdiction over Counts IV and V.

15

July 2, 2003) (noting that the Court of Chancery maintains "exclusive, rather than concurrent, jurisdiction" over claims for negligent misrepresentation); *SPay, Inc. v. Stack Media Inc.*, No. CV 2020-0540-JRS, 2021 WL 6053869, at *3–*4 (Del. Ch. Dec. 21, 2021) (exercising subject matter jurisdiction based on the fact that Plaintiff sought the equitable remedy of recission).

Instead, Robinson urges transfer based on the Court of Chancery's lack of jurisdiction over the remaining two claims. This argument ignores the clean-up doctrine's clear application to this case. Because the Court of Chancery has subject matter jurisdiction as to a portion of Robinson's complaint, it may exercise jurisdiction over the entirety of his claims. *Kroll*, 2023 WL 6012795, at *4. As such, dismissal of this action is appropriate.

**IV.   CONCLUSION**

For the forgoing reasons, the Court **GRANTS** Defendants' Motion (ECF No. 17) and **DISMISSES** this action for *forum non conveniens*. All other pending Motions in this case are **DENIED AS MOOT**.

**IT IS SO ORERED.**

**SIGNED** at Houston, Texas, on this the 3rd day of May, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE